IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DANIELLE C.,**[1]<br><br>    Plaintiff,<br><br>v.<br><br>**NANCY A. BERRYHILL,** Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security,<br><br>    Defendant. | Case No. 3:18-cv-234-SI<br><br>**OPINION AND ORDER** |

George J. Wall, 825 NE 20th Ave., Suite 330, Portland, OR 97232. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Joseph J. Langkamer, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this opinion uses the same designation for the non-governmental party's immediate family member.

**Michael H. Simon, District Judge.**

Danielle C. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act. For the reasons the follow, the decision is reversed and remanded for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for DIB and SSI on November 20, 2013. Administrative Record ("AR") 18. She alleged disability beginning September 1, 2004, due to fibromyalgia, endometriosis, chronic fatigue, chronic depression, post-traumatic stress disorder ("PTSD"), chronic pain, borderline personality disorder, cyclothymia, a learning disability, and pelvic organ prolapse. AR 18, 89. Plaintiff was born in 1988 and was 15 years old on the alleged disability onset date. AR 89. Plaintiff has a high school education and has taken some college classes but never obtained any certificates or degrees. AR 969. From 2005 to 2013, Plaintiff worked short stints as a cashier, nutrition specialist, and waitress, never lasting more than a few months at any given job. AR 241. From 2007 to 2011, Plaintiff had a part-time job working one day per week as a learning assistant at a school district. AR 241, 247.

The Commissioner initially denied Plaintiff's application on March 28, 2014, and again on reconsideration on August 12, 2014. AR 18. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 26, 2016. AR 38. At the hearing, the ALJ heard testimony from Plaintiff and vocational expert ("VE") Richard Hinks. AR 38-86. The ALJ issued a decision on August 31, 2016, finding Plaintiff not disabled. AR 18-31. Plaintiff petitioned the Appeals Council for review. AR 214-15. The Appeals Council denied her petition on December 5, 2017, at which date the ALJ's decision became the final decision of the Commissioner. AR 1-6. Plaintiff now seeks review in this Court.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 1, 2014, the alleged onset date. AR 20. At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar spine degenerative disc disease, obesity, fibromyalgia, adjustment disorder with mixed anxiety and depressed mood, PTSD, and

borderline personality disorder. *Id.* The ALJ found that Plaintiff's pelvic pain secondary to endometriosis, unspecified depressive disorder, somatic symptom disorder, panic disorder, and marijuana abuse were non-severe. AR 21. The ALJ also concluded that there was a lack of objective evidence to substantiate the existence of Plaintiff's alleged restless leg syndrome and learning disability. *Id.*

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. AR 21-23. The ALJ next assessed Plaintiff's RFC and found that Plaintiff could perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), with certain limitations. AR 23. Specifically, the ALJ found that Plaintiff is not able to climb ladders, ropes, or scaffolds; can frequently climb ramps and stairs; occasionally stoop, kneel, crouch, and crawl; can perform work that does not require concentrated exposure to hazards or vibrations; is able to perform simple, routine tasks defined as no greater than reasoning level 2, not at a production rate pace; she can have occasional superficial contact with the public and co-workers; and her work should involve no team tasks. *Id.*

At step four, the ALJ determined that Plaintiff had no past relevant work. AR 29. At step five, the ALJ relied on the VE's testimony to conclude that Plaintiff could perform jobs that exist in significant numbers in the national economy, including lot attendant, laundry sorter, and tanning salon attendant. AR 29-30. Thus, the ALJ found that Plaintiff was not disabled. AR 30.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (A) improperly assessing the medical opinions of examining physician Gregory Cole, Ph.D. and treating licensed professional counselor ("LPC") Wendy Bauman; and (B) improperly concluding that Plaintiff's endometriosis was not a severe impairment.

## A. Medical Opinion Evidence

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are

supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), as amended (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014); see also *Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996) (noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id*. at 600 (opinions of non-treating or nonexamining physicians may serve as substantial

evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

   1. **Dr. Cole**

The ALJ gave little weight to Dr. Cole's conclusion that Plaintiff had a marked limitation in her ability to respond appropriately to usual work situations and changes in a routine work setting. AR 27. The ALJ found that Dr. Cole's determination was inconsistent with Plaintiff's ability to care for her child, prepare simple meals, shop, attend college, and drive a car. *Id.* It is not clear, however, how Plaintiff's ability to care for a child or perform household chores demonstrates that she would be able to respond appropriately to work situations and changes in a routine work setting. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").

In addition, despite attending community college in 2012, Plaintiff had to withdraw for two terms during the 2013-14 school year due to medical problems. AR 686, 826. When Plaintiff was still attending classes her counselor coordinated with the disability office of the college to devise accommodations for Plaintiff, such as extra time for taking tests, allowing her to take tests at home, and extra leeway for missing days of class, which she "always did." AR 52-53. Despite stints at Portland Community College and Marylhurst University, Plaintiff never obtained any educational certificates or degrees. AR 969.

The Commissioner argues that the "activities required greater ability to respond to a work setting than Dr. Cole opined." Def. Br. at 12-13. The Commissioner, however, fails to explain how any of these activities demonstrate Plaintiff's ability to respond appropriately to usual work situations and changes in a routine work setting. Accordingly, the ALJ improperly rejected Dr. Cole's opinion.

## 2. LPC Bauman

Evidence from an acceptable medical source is used to establish whether a claimant has a medically determinable impairment. 20 C.F.R. § 404.1521. Acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1502. Evidence from "other sources," including, but not limited to, "nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, [and] therapists," may also be used to show the severity of a claimant's impairments and how they affect his ability to work. SSR 06-03p at *2. To reject evidence from "other sources," the ALJ must give germane reasons for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Because LPC Bauman was a licensed counselor, she is considered an "other source." 20 C.F.R. § 404.1502.

The ALJ gave the treating opinion of LPC Bauman little weight, finding that it was "unpersuasive in light of the spotty treatment history leading up to completion of that form." AR 28. The fact that Plaintiff was being treated by LPC Bauman less frequently in the two years leading up to her opinion, however, is not in itself a sufficient basis for rejecting LPC Bauman's opinion, given that the ALJ afforded great weight to the opinions of the non-examining doctors, who never treated Plaintiff. AR 27; *see William D. v. Berryhill*, No. 6:18-cv-38-SI, 2019 WL 1919170, at *11 (D. Or. Apr. 30, 2019) ("A finding that th[e] treatment histories [of two nurse practitioners] were insufficient would be inconsistent with the ALJ's finding that the opinion of [the examining doctor]—who saw Plaintiff only once and never treated him—was entitled to great weight."); *Abe L.S. v. Comm'r of Soc. Sec.*, No. 3:17-cv-00703-AA, 2018 WL 3090198, at *7 (D. Or. Jun. 21, 2018) (holding that a two-month treating relationship was not a proper basis for rejecting the opinion of a nurse practitioner "particularly considering that the ALJ relied heavily on the opinions of the non-examining physicians, who had no treating

relationship with plaintiff."). Further, the ALJ's finding was factually incorrect. The ALJ found that LPC Bauman only treated Plaintiff twice in 2014; the record, however, shows that LPC Bauman treated Plaintiff at least 30 times in 2014. AR 778-81, 1126-30.

The Commissioner argues that the ALJ properly relied on the gaps in treatment leading up to LPC Bauman's assessment because "'the longer a treating source has treated [a claimant] and the more times [the claimant has] been seen by a treating source, the more weight [the ALJ] will give to the source's medical opinion.'" Def. Br. at 10 (citing 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i)). Nevertheless, the regulatory language relied on by the Commissioner says nothing about gaps in treatment. Rather, it states that more weight is given based on the overall length of the treatment relationship and the number of times that a source treated the claimant over the course of that relationship. The record in this case reflects that LPC Bauman treated Plaintiff more than 100 times from 2009 through 2016. AR 778-811, 1123-30, 1489-90. The regulations that the Commissioner relies on indicate that due to LPC Bauman's extensive treatment history, greater weight should have been given to her opinion.

The ALJ also found that LPC Bauman's opinion was inconsistent with other contemporaneous treatment notes "which indicated an anxious mood, but no psychomotor agitation and no memory deficits." AR 28. Notably, LPC Bauman did not opine that she would expect psychomotor agitation, and it is not clear how the absence of such symptoms is inconsistent with her opinion. *See* AR 1368-70. Additionally, LPC Bauman specifically concluded that Plaintiff had, at most, slight difficulties with memory. AR 1368. Moreover, in the two treatment notes that the ALJ relied on, psychiatric mental health nurse practitioner ("PMHNP") Dahl noted that Plaintiff was having an increase in panic attacks, was experiencing increased irritability and anxiety, and that she was hypervigilant and felt "on edge." AR 1500-05.

PMHNP Dahl also noted that Plaintiff had experienced a decrease in her ability to concentrate. AR 1503. Therefore, PHMNP Dahl's contemporaneous treatment notes were not inconsistent with LPC Bauman's opinion. As such, the ALJ improperly rejected the opinion of LPC Bauman.

## B. Severe Impairments

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(c). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting SSR 85–28). The ALJ found that Plaintiff's endometriosis was not severe because "over the longitudinal period, [Plaintiff], more often than not, appeared in no distress." AR 21. The record, however, reflects that Plaintiff frequently reported pelvic pain that was often severe or incapacitating. AR 506, 593, 616, 626, 628, 709, 743, 823, 864, 1041, 1046, 1063, 1150, 1168, 1321. The ALJ also found that Plaintiff stated that she obtained "great relief" after pelvic floor therapy. AR 21. At that appointment, Plaintiff also reported that she still had "severe pelvic pain that incapacitates her." AR 626.

In addition, the ALJ relied on the fact that injection treatment and pain medications provided Plaintiff with relief. AR 21. Plaintiff did initially indicate that the injections provided considerable relief; but, one month later, she explained that the injections had ultimately provided only "some partial relief" which helped only in the short term. AR 720, 723, 823. Furthermore, while there were times that Plaintiff reported her pain was managed moderately well with medication, she subsequently reported worsening endometriosis pain and eventually underwent a hysterectomy to treat it. AR 1058, 1064, 1083, 1150. Despite the hysterectomy, Plaintiff's chronic pain did not improve. AR 1321. Therefore, the record reflects that Plaintiff suffered from severe, and at times, incapacitating pain from endometriosis. Moreover, Plaintiff

took extensive measures to treat her endometriosis, including pain medications, physical therapy, nerve block injections, and two surgeries. AR 506, 626, 669, 723, 823, 1064, 1321. Ultimately, all of the treatments failed. AR 626, 823, 1058, 1321. Accordingly, Plaintiff's endometriosis was not merely a "slight abnormality" that would have "'no more than a minimal effect on [her] ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting SSR 85–28). Thus, the ALJ's step two determination was not supported by substantial evidence.

The Commissioner argues that any error in the ALJ's step two analysis was harmless because step two was resolved in Plaintiff's favor. *See*, *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). In formulating the RFC, the ALJ must consider all of a claimant's impairments, both severe and non-severe; accordingly, the RFC "*should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.*; *see also* SSR 98-8p, 1996 WL 374184, at *5. Although the ALJ was required to consider Plaintiff's endometriosis—whether she found it to be severe or not—there is no evidence that the ALJ did so in crafting Plaintiff's RFC. Indeed, after concluding that it was not severe at step two, the ALJ's decision made no further mention of Plaintiff's endometriosis or pelvic pain and failed to discuss either in assessing Plaintiff's RFC. AR 23-29. Therefore, the ALJ's error was not harmless.

## C. Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine

if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

In this case, the first requisite is met. As discussed above, the ALJ failed to provide legally sufficient reasons for rejecting evidence and her decision contained errors of law. However, the second requisite is not met, as the record is not fully developed or free from conflicts. Although Dr. Cole found that Plaintiff would be markedly limited in her ability to respond appropriately to usual work situations and to changes in a routine work setting, LPC Bauman found that Plaintiff had little to no limitations in her ability to respond appropriately to expected changes in the work setting and routine, and only moderate difficulties in her ability to respond to unexpected changes. AR 966, 1369. Additionally, while LPC Bauman found that Plaintiff was substantially impaired in her ability to interact with coworkers and the general public, Dr. Cole concluded that Plaintiff would be able to function satisfactorily in those areas. *Id.* LPC Bauman also opined that Plaintiff would be substantially limited in her ability to

complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a constant pace without an unreasonable number and length of rests. AR 1369. However, Dr. Winslow and Dr. Kennemer concluded that while Plaintiff's condition may cause intermittent tardiness or absence, over the course of weeks, her productivity would be satisfactory. AR 110, 128. Therefore, the record is still not fully developed and it is not clear that Plaintiff is, in fact, disabled. Remand for further proceedings is the appropriate remedy. *Treichler*, 775 F3d at 1105. ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

On remand, the ALJ shall: (1) accept Dr. Cole's opinion and incorporate it into the RFC or provide legally sufficient reasons for its rejection; (2) accept LPC Bauman's opinion and incorporate it into the RFC or provide legally sufficient reasons for discounting it; (3) evaluate plaintiff's endometriosis as a severe impairment and incorporate any resulting limitations into the RFC; (4) conduct any additional proceedings as needed.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings.

**IT IS SO ORDERED**.

DATED this 3rd day of May, 2019.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge